**In re Leon L. SHORE a/k/a Leon Shore, D.O., Debtor.**

No. 95–6322–CIV.

United States District Court,
S.D. Florida.

March 7, 1996.

John Cruz, Fort Lauderdale, FL, for debtor Leon Shore.

Robert Charbonneau, Fort Lauderdale, FL, for Marika Tolz, Trustee.

### ORDER ADOPTING, RATIFYING AND AFFIRMING MEMORANDUM ORDER GRANTING MARIKA TOLZ, TRUSTEE'S MOTION TO FIND DEBTOR IN CONTEMPT

ARONOVITZ, District Judge.

**THIS CAUSE** came before the Court upon United States Bankruptcy Judge Raymond

B. Ray's *Memorandum Order Granting Marika Tolz, Trustee's Motion to Find the Debtor, Leon L. Shore in Contempt* ("Contempt Order") entered January 25, 1995 and upon the *Order Transferring Case to District Court for De Novo Review Pursuant to Federal Rule of Bankruptcy Procedure 9033(d)* entered on March 13, 1995.

In January, 1995, the bankruptcy court found the Debtor in contempt of court for failing to turnover property of the estate to Marika Tolz, the Chapter 7 Trustee (the "Trustee") and entered the Contempt Order. On February 6, 1995, Leon L. Shore (the "Debtor") filed *Debtor's Objections to Memorandum Order Granting Marika Tolz, Trustee's Motion to Find the Debtor, Leon L. Shore in Contempt.* On February 28, 1995, the Trustee filed *Trustee's Response in Opposition to Debtor's Objection to Memorandum Order Granting Marika Tolz, Trustee's Motion to Find the Debtor, Leon L. Shore in Contempt.* Thereafter, in March, 1995, the bankruptcy court transferred this case to the District Court for a de novo review of its findings of fact and conclusions of law contained in the Contempt Order.

The Court has considered the Contempt Order, the Debtor's objection(s) thereto, and the Trustee's response to the Debtor's objection(s). The Court has further reviewed the December 20, 1994 transcript from the hearing on the Trustee's motion to find Leon Shore in contempt and, for the reasons discussed herein, this Court adopts the bankruptcy court's findings of fact and conclusions of law, affirming the finding that Debtor is in civil contempt.

## BACKGROUND

Debtor filed a voluntary petition under Chapter 7, title 11, United States Code, on June 4, 1991. Marika Tolz was subsequently appointed as the Chapter 7 Trustee and was successful in establishing that one (1) of the assets of the Debtor's bankruptcy estate is the 27 Hollywood West Land Trust (the "Land Trust").[1]

Post-petition, Debtor received $45,262.52 from the sale of land held by the Land Trust. However, the Debtor did not disclose to the Trustee his receipt of the $45,262.52 sale proceeds. The Debtor utilized the funds to satisfy personal Internal Revenue Service debt and to repay loans from the Debtor's relatives.

The Trustee first learned of the Debtor's receipt of the $45,262.52 in sale proceeds on June 8, 1994 when she conducted an examination of Sam Axelrod, the trustee of the Land Trust. The Trustee thereafter moved to compel turnover of the funds from the Debtor. On September 20, 1994, the bankruptcy court entered an order, upon the agreement of the parties, directing the Debtor to turnover the $45,262.52 of estate property (the "Turnover Order").

Notwithstanding the Turnover Order, entered upon the agreement of the parties, the Debtor did not turnover any money to the Trustee, so the Trustee filed her Motion to Find Leon Shore in Contempt (the "Contempt Motion") on November 16, 1994. The Contempt Motion sought to have the bankruptcy court determine the Debtor to be "in contempt of previous orders issued by th[e] Court." On December 20, 1994, the court conducted an evidentiary hearing on the Contempt Motion. The Debtor fully participated in that evidentiary hearing. The court found the Debtor to be in civil contempt and thereupon entered the Contempt Order.

The Debtor does not dispute the fact that he has not complied with previous court orders. The Debtor does, however, object to the Contempt Order, pursuant to FRBP 9020(c),[2] on the following grounds:

1. The Land Trust is actually an asset of the Profit Sharing Plan of Leon Shore, D.O., P.A (the "Plan"), which Plan the Debtor initially sought to exempt from the bankruptcy estate. However, the Trustee objected to the claimed exemption and the bankruptcy court sustained the Trustee's objection, denying the Debtor the exemption. On appeal, by order dated August 27, 1993, this Court affirmed the bankruptcy court's order denying the exemption. Thus, the Plan, and all of its assets (including the Land Trust), are property of this Debtor's bankruptcy estate.

2. FRBP 9020(c) states, in pertinent part, that the contempt order:

shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless within the 10 day period, the

1. The Motion upon which the Contempt Order is premised was deficient because it did not state whether civil or criminal contempt was being sought;
2. The bankruptcy court erred in concluding the Debtor was able to comply with previous court orders; and
3. The Contempt Order does not specifically provide the Debtor the option of purging himself of contempt by proving his inability to comply with the Contempt Order.

### ANALYSIS

■■■ A party seeking a civil contempt order must prove by clear and convincing evidence that the respondent(s) violated a court order. *Commodity Futures Trading Com'n v. Wellington Precious Metals*, 950 F.2d 1525 (11th Cir.1992) *cert. denied*, 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992); *In re Spanish River Plaza Realty Co.*, 155 B.R. 249, 253 (Bankr.S.D.Fla.1993). Upon review of the December 20, 1994 transcript from the hearing on the Contempt Motion, and upon the Debtor's admission that he has not complied with the Turnover Order, this Court is satisfied that there was clear and convincing evidence that the Debtor violated the bankruptcy court's orders. By clear and convincing evidence, the record supports the bankruptcy court's finding that the Debtor disobeyed the Turnover Order by willfully failing to deliver $45,262.52 in estate property to the Trustee. The bankruptcy court did not find that the Debtor carried his burden of proof to establish that his non-compliance with the Turnover Order was as a result of his inability to comply. Therefore, Debtor's non-compliance cannot be excused. These findings and conclusions of the bankruptcy court are supported by the record and will be adopted, ratified and affirmed herein.

**A. The Debtor was not denied due process protections simply because the Motion upon which the Contempt Order is premised did not specifically state civil contempt was being sought.**

■■■ Contempt is considered to be civil in nature if the sanction for such contempt is remedial. The exact nature of the contempt must be drawn from an examination of the character and purpose of the sanction involved. *United Mine Workers of America v. Bagwell*, —— U.S. ——, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). Underlying the distinction between criminal and civil contempt sanctions is the procedural protections due a litigant before any particular contempt penalty may be imposed. Because civil contempt sanctions are viewed as non-punitive and avoidable, fewer procedural protections for such sanctions are required. *Bagwell*, —— U.S. at ——, 114 S.Ct. at 2559.

■■■ The Debtor was afforded the necessary procedural protections prior to being sanctioned for his contempt. It is irrelevant that the Trustee's Motion failed to formally specify whether civil or criminal contempt was being sought. Civil contempt is designed to obtain compliance with court orders and to compensate for damages resulting from non-compliance. It is evident from the Contempt Motion that the Trustee was seeking to enforce the previously entered Turnover Order and restore the estate to the same position it would have been in had the Debtor not wrongfully withheld estate assets. The fact that the Contempt Motion did not explicitly state the Trustee was seeking an order of civil contempt for refusal to turnover property of the estate is of no consequence. The Debtor was aware that, pursuant to 11 U.S.C. § 542, he has the responsibility to turnover estate property to the Trustee. Aware of his responsibility, the Debtor agreed to repay the Trustee and agreed to the entry of the Turnover Order directing him to pay the agreed sum within a certain period of time. Yet despite the Debtor's admission that he never paid his agreed-upon and court-ordered obligation, he pleads ignorant to the fact that he knew his violation of the Turnover Order could lead to civil contempt.

It is apparent from the record that the Debtor knew the court could coerce compli-

---

entity named therein serves and files objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the

order shall be reviewed as provided in Rule 9033.

ance with the Turnover Order and that any punishment imposed for non-compliance would be remedial, in that such punishment would cease immediately upon his turnover of the $45,262.52 in estate property. The Debtor was given the opportunity to avoid the contempt charges by fully complying with the Turnover Order and returning the $45,262.52 he received post-petition to the Trustee, but he chose not to comply at all. The Debtor cannot now claim he has been prejudiced by the Trustee's failure to state in the Contempt Motion that she was seeking to have the Debtor determined to be in civil contempt. The record clearly indicates that the contempt sought and ordered was civil in nature. Accordingly, any error in omitting the reference to "civil" contempt in the Contempt Motion is harmless.

**B. The Court correctly concluded that the Debtor failed to establish his present inability to comply with court orders.**

"Once the moving party makes a prima facie showing that a court order was violated, the burden of production shifts to the alleged contemnor to show a 'present inability to comply that goes beyond a mere assertion of inability.'" *U.S. v. Barnette,* 902 F.Supp. 1522, 1531 (M.D.Fla.1995) citing *Howard Johnson Co. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir.1990). Conduct evincing substantial, though not complete, compliance with the court order may be excused if such substantial compliance was made in good faith; but, the alleged contemnor " 'must go beyond a mere assertion of inability and satisfy his burden of production on the point by introducing evidence in support of his claim.'" *Barnette,* 902 F.Supp. at 1532 *citing U.S. v. Hayes,* 722 F.2d 723, 725 (11th Cir.1984).

The record in this case is devoid of any proof to substantiate Debtor's contention that he is presently unable to purge the contempt by complying with the Turnover Order. The only evidence of record upon which the Debtor relied to prove his present inability to comply with the Turnover Order is the Debtor's own testimony. Although the Debtor believes his testimony is sufficient, it is not. As previously stated, the alleged contemnor must go beyond a mere assertion of inability to comply; the Debtor must introduce evidence in support of his claim. Though given the opportunity, the Debtor failed to introduce any evidence to persuade the bankruptcy court he was presently unable to comply with the Turnover Order.

The Debtor further argues that the bankruptcy court should not have taken into account his spouse's income to determine whether he was presently unable to comply with the Turnover Order. From the record, it appears that the bankruptcy court considered the spouse's income to assess whether Debtor's testimony [that his income was needed to support both he and his wife] was credible, and whether Debtor made good faith efforts toward substantially complying with the Turnover Order. However, the court was not persuaded by the Debtor's testimony. The bankruptcy court determined that Debtor's approximate $40,000.00 income was sufficient for him to have at least entered into a payment plan, to show his good faith efforts toward repayment of his court-ordered obligation. The bankruptcy court found that Debtor's noncompliance with the Turnover Order, even minimally, evidenced the fact that he made no good faith attempt to comply with the court's order.

The fact that the Debtor's wife also earns her own income is significant to support the court's finding that the total amount of the Debtor's $40,000.00 income is not the sole source of income to support the Debtor and his spouse. With the additional income his spouse makes, the court determined that the Debtor could have used some of his $40,-000.00 income to repay the estate to demonstrate his good faith effort to comply with the Turnover Order, but instead he did not use the slightest of efforts to comply. The Debtor never made any attempt at repayment nor did he even attempt to contact the Trustee to make payment arrangements, assuming he could not pay the entire amount at once. From the record before the Court, it is clear that the Debtor presented no evidence at the hearing to substantiate his contention that he does not have the ability to comply with the Turnover Order. Accordingly, this Court adopts the bankruptcy court's findings and

conclusions that the Debtor has failed to establish his present inability to comply with the bankruptcy court's orders.

### C. Implicit in the Contempt Order is the option to purge the civil contempt due to the condemnor's inability to comply.

 A contemnor's ability to purge himself of contempt, or to otherwise excuse himself from the imposition of sanctions therefor, rests solely with the contemnor. *Barnette,* 902 F.Supp. at 1531. Civil contempt is a conditional sanction and the person in contempt is afforded the opportunity to bring himself into compliance. *Lance v. Plummer,* 353 F.2d 585, 592 (5th Cir.1965). The inability to comply is a complete defense to a contempt citation, and such defenses should be raised by the litigants at the appropriate time for judicial determination. It is not the court's obligation to remind the parties just what defenses are available to them.

Although the Turnover Order and the Contempt Order did not explicitly state that the Debtor would be excused from compliance with said orders if he were able to prove a present inability to comply, the Debtor nonetheless has that opportunity available to him. In fact, the Debtor **had** that opportunity available to him previously, but the bankruptcy court found that he failed to carry his burden of proving his present inability to comply. The Debtor cannot now be heard to complain that he was prejudiced by the failure of either order to include a statement to the effect that the Debtor has the opportunity to purge himself of contempt due to his inability to comply. The Debtor had that opportunity available to him, and still has that opportunity available to him, whether the orders state so or not. Therefore, any omission of this defense in the Turnover or Contempt Orders is inconsequential and harmless. Accordingly, it is

**ORDERED AND ADJUDGED** that the Memorandum Order Granting Marika Tolz, Trustee's Motion to Find the Debtor, Leon L. Shore in Contempt is hereby ADOPTED, RATIFIED AND AFFIRMED in all respects. The Debtor is in civil contempt of court for withholding $45,262.52 in property belonging to the bankruptcy estate and its creditors, and for disobeying the bankruptcy court's order requiring and directing the turnover of said $45,262.52. It is further

**ORDERED AND ADJUDGED** that the Debtor's alleged grounds for disobeying the bankruptcy court's orders were carefully considered and found to be without merit. Accordingly, the Debtor, Leon Shore, SS. # 205–28–8115, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of SIX (6) months or until he has purged himself of his contempt of the bankruptcy court's September 20, 1994 Agreed Order Granting Trustee's Motion for Turnover Pursuant to 11 U.S.C. § 542 by fully complying with the September 20, 1994 Agreed Order Granting Trustee's Motion for Turnover Pursuant to 11 U.S.C. § 542 or by affirmatively proving his inability to so comply. The Debtor shall surrender to the United States marshal for this district, at 299 East Broward Blvd., Fort Lauderdale, FL, at 12:00 noon on March 29, 1996, to be held in custody by the United States Bureau of Prisons.

**DONE AND ORDERED.**